**FILED**
CLERK, U.S. DISTRICT COURT

1/27/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ VM _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

April 2021 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>LUIS ALFREDO DE LA ROSA RIOS,<br>　aka "Lil J,"<br>　aka "Lil Malo,"<br>ERNESTO CISNEROS,<br>　aka "Gonzo,"<br>　aka "Spooky,"<br>JESSE CONTRERAS,<br>　aka "Skinny Jack,"<br>　aka "Flaco," and<br>HAYLEE MARIE GRISHAM,<br><br>　　　　　Defendants. | CR  2:22-cr-00020-PA<br><br><u>I N D I C T M E N T</u><br><br>[18 U.S.C. § 1959(a)(1): Violent Crime in Aid of Racketeering; 18 U.S.C. §§ 981(a)(1)(C), 924(d) and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

　　　The Grand Jury charges:

　　　　　　　　[18 U.S.C. §§ 1959(a)(1), 2(a)]

　　　　　　　　　　　[ALL DEFENDANTS]

A.　<u>GENERAL ALLEGATIONS</u>

　　　At times relevant to this Indictment:

　　　1.　<u>THE RACKETEERING ENTERPRISE</u>

　　　1.　Defendants LUIS ALFREDO DE LA ROSA RIOS, also known as ("aka") "Lil J," aka "Lil Malo" ("RIOS"); ERNESTO CISNEROS, aka

"Gonzo," aka "Spooky" ("CISNEROS"); JESSE CONTRERAS, aka "Skinny Jack," aka "Flaco" ("CONTRERAS"); and HAYLEE MARIE GRISHAM ("GRISHAM"), and others known and unknown to the Grand Jury, were members and associates of the Florencia 13 street gang (hereinafter referred to as "F13"), a criminal organization operating in and around Los Angeles, California, whose members and associates engaged in, among other things, numerous acts of violence and other crimes, including acts involving murder, robbery, and trafficking in narcotics. F13 operated within the Central District of California.

2. F13 is a multi-generational gang founded in Los Angeles, California in the early 1950s. The gang began as a small group of individuals who lived in and around the area of Florence Boulevard, in and near Los Angeles, California. Initially, the gang was primarily involved in street robberies, drug sales, and fighting with rival gang members in "turf battles." Through the years, the gang dramatically increased its membership by absorbing smaller, less powerful local gangs.

3. F13 was primarily a Latino street gang. F13 gang members were involved with various violent crimes including acts involving murder, assault, robbery, and extortion, as well as narcotics trafficking, burglary, vehicle theft, and human smuggling, and money laundering. Associates of the F13 gang were aware of, participated in, and benefited from these criminal activities.

4. While F13's "territory" has changed over time, it historically has been contained within the approximate area bordered by the 10 freeway to the North, Imperial Highway to the South, the 110 freeway to the West, and the 710 freeway to the East; and it included at least the unincorporated Florence-Firestone neighborhood

(also known as Florence-Graham) and parts of several nearby cities, such as Huntington Park, South Gate, Maywood, Bell, and Lynwood. Based on the strength of its numbers and its reputation for violence, F13 controlled drug trafficking and other illegal activities within its territory, including the area in which the murder charged in Paragraph 12 below occurred.

5.  F13 was controlled by members and associates of the "Mexican Mafia," or "La Eme." The Mexican Mafia was an organized group of individuals who controlled much of the drug distribution and other criminal activities within California State Prisons, local county jails, and some federal prisons. Members of the Mexican Mafia came from the ranks of local street gangs, including F13. In return for allowing local street gangs to maintain control over their respective territories and for protecting the gangs' members and associates during periods of incarceration, the Mexican Mafia required the gangs to collect and pay "taxes" on drug trafficking and other illicit and illegal conduct taking place in those territories. These illicit funds were intended to be controlled by, and were often held in trust by, gang members and associates for the Mexican Mafia member(s) in charge of a particular area. Members and associates of F13 regularly paid extortionate taxes to F13, which in turn paid the Mexican Mafia members who oversaw the gang; and the collection of extortionate taxes from drug dealers operating within F13's territory was a primary task of the gang's leadership on the streets, as was punishing individuals who fail to pay the requisite taxes.

6.  To provide a revenue source, increase and maintain position within F13, and instill a climate of fear within F13's territory, F13 members and associates committed acts of robbery against individuals

not associated with F13. Groups of F13 members, or F13 robbery crews, robbed people on the street and divided the proceeds. If a significant amount of money was obtained during a robbery, members of the F13 robbery crew paid a portion of the proceeds up to members of the Mexican Mafia. The appropriate amount of such a payment was typically one third of the take. These payments to the Mexican Mafia helped ensure the assistance of the Mexican Mafia, should members or associates of F13 require it.

7. F13 members and associates went on "missions," to include committing shootings in rival gangs' territories and robberies within F13 territory so that the entire F13 gang had awareness that a specific clique was "putting in work." "Putting in work" maintained the status and reputation of a clique and its members and associates, and F13 as a whole. At times, more senior F13 members ordered younger, less senior F13 members to go on missions, including robberies. It was not uncommon for the more senior F13 member to follow the younger members and associates to observe the commission of the crimes to ensure they were done. Senior F13 members also taught or groomed the younger F13 members and associates in the ways of committing crimes of violence, including robbery.

8. F13, including its leaders, members, and associates, constituted an enterprise as defined by Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that was engaged in, and the activities of which affected, interstate and foreign commerce. F13 constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

9. F13, through its members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts involving murder, in violation of California Penal Code Sections 21a, 31, 182, 187, 189, 190, and 664, acts involving robbery, in violation of California Penal Code Sections 21a, 31, 182, 211, and 664, and offenses involving trafficking in controlled substances, in violation of Title 21, United States Code, Sections 846 and 841.

2. PURPOSES OF THE ENTERPRISE

10. The purposes of the F13 enterprise included, but were not limited to, the following:

    a. Enriching members and associates of F13 through, among other things, the control of, and participation in, the trafficking of controlled substances in F13 territory and elsewhere, the operation of illegal gambling establishments, known as casitas, the collection of extortionate taxes, and commission of robberies.

    b. Maintaining control over all F13 territory.

    c. Preserving, protecting, and expanding the power of F13 through the use of intimidation, violence, and threats of violence.

    d. Violently retaliating against rival gang members or perceived outsiders who challenged F13 authority or attempted to encroach on F13 territory; and

    e. Exposing and punishing F13 members and associates who are perceived to have violated F13 codes of conduct.

3. THE MEANS AND METHODS OF THE ENTERPRISE

11. The means and methods by which the members and associates of F13 conducted and participated in the conduct of the affairs of the F13 criminal enterprise included the following:

a. Members and associates of F13 committed, attempted to commit, conspired to commit, and threatened to commit acts of violence, including murder and robbery, to preserve, protect, and expand F13's criminal operations.

b. Members and associates of F13 promoted a climate of fear through acts of violence and threats to commit acts of violence.

c. Leaders of F13 disseminated rules and orders to be followed by all participants in the F13 enterprise.

d. Members and associates of F13 engaged in the trafficking of controlled substances and firearms, committed robberies, and collected extortionate taxes to generate revenue for the enterprise.

B. <u>VIOLENT CRIME IN AID OF RACKETEERING</u>

12. On or about January 10, 2022, in Los Angeles County, within the Central District of California, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from F13, and for the purpose of gaining entrance to and maintaining and increasing position in F13, an enterprise engaged in racketeering activity, defendants RIOS, CISNEROS, CONTRERAS, and GRISHAM, and others known and unknown to the Grand Jury, each aiding and abetting the other, murdered F.A., in violation of California Penal Code Sections 31, 187, 189, 190, and 211.

FORFEITURE ALLEGATION

[18 U.S.C. §§ 981(a)(1)(C), 924(d) and 28 U.S.C. § 2461(c)]

[ALL DEFENDANTS]

1.   Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 924(d), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offense set forth in the sole count of this Indictment.

2.   Any defendant so convicted shall forfeit to the United States of America the following:

   (a)   All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offense;

   (b)   All right, title, and interest in any firearm or ammunition involved in or used in such offense; and

   (c)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been

```
Case 2:22-cr-00020-PA   Document 46   Filed 01/27/22   Page 8 of 8   Page ID #:123
```

placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

                          A TRUE BILL

                          /S/
                         Foreperson

TRACY L. WILKISON
United States Attorney

[signature]

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

JOANNA M. CURTIS
Assistant United States Attorney
Chief, Violent and Organized
Crime Section

CHRISTOPHER C. KENDALL
Assistant United States Attorney
Deputy Chief, International
Narcotics, Money Laundering, and
Racketeering Section

KATHY YU
Assistant United States Attorney
Violent and Organized Crime
Section