E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JOANNA M. CURTIS (Cal. Bar No. 203151)
Assistant United States Attorney
Chief, General Crimes Section
CHRISTOPHER C. KENDALL (Cal. Bar No. 274365)
Assistant United States Attorney
Deputy Chief, International Narcotics,
  Money Laundering, and Racketeering Section
KATHY YU (Cal. Bar No. 268210)
Assistant United States Attorney
Violent and Organized Crime Section
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0298/2576/2431
     Facsimile: (213) 894-0141
     E-mail:    joanna.curtis@usdoj.gov
                christopher.kendall@usdoj.gov
                kathy.yu@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>            v.<br><br>LUIS ALFREDO DE LA ROSA RIOS,<br><br>            Defendant. | No. CR 22-20-PA-1<br><br>GOVERNMENT'S SENTENCING MEMORANDUM<br><br>Hearing Date: December 18, 2023<br>Hearing Time: 8:30 a.m.<br>Location:     Courtroom of the<br>              Hon. Percy Anderson |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Joanna Curtis, Christopher C. Kendall, and Kathy Yu, hereby files its Sentencing Memorandum as to defendant Luis Alfredo De La Rosa Rios.

This Sentencing Memorandum is based upon the attached memorandum of points and authorities, the files and records in this case, the

exhibits contemporaneously lodged, and such further evidence and argument as the Court may permit.

Dated: December 4, 2023

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

/s/Joanna M. Curtis
JOANNA M. CURTIS
CHRISTOPHER C. KENDALL
KATHY YU
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                          PAGE

TABLE OF AUTHORITIES....................................................ii

GOVERNMENT'S SENTENCING MEMORANDUM.......................................1

I.   INTRODUCTION........................................................1

II.  STATEMENT OF FACTS..................................................1

     A.   F.A.'s Background..............................................1

     B.   Florencia 13, the Enterprise...................................2

     C.   Robbery of S.A. and J.M........................................3

     D.   Murder of F.A..................................................4

III. VICTIM IMPACT.......................................................5

IV.  PROCEDURAL BACKGROUND...............................................6

V.   ARGUMENT............................................................6

     A.   Sentencing Guidelines' Calculations............................6

          1.   The Plea Agreement.......................................6

          2.   The USPO's Calculations..................................7

          3.   The Parties' Agreement...................................7

     B.   Government's Sentencing Recommendation.........................8

          1.   History and Characteristics of Defendant.................8

          2.   Nature and Circumstance of the Offense...................8

          3.   Need for Deterrence and Promotion of Respect for
               the Law.................................................10

          4.   Need to Avoid Unwarranted Sentencing Disparities........11

VI.  FINE AND RESTITUTION...............................................11

VII. CONCLUSION.........................................................12

**TABLE OF AUTHORITIES**

DESCRIPTION                                                              PAGE


Gall v. United States,
  552 U.S. 38 (2007) ............................................... 11
United States v. Treadwell,
  593 F.3d 990 (9th Cir. 2010) ..................................... 11

**STATUES**

18 U.S.C. § 1962(d)............................................... 6, 8
18 U.S.C. § 2259(b)(4)(A).......................................... 13
18 U.S.C. § 3553(a)(1)............................................8, 9
18 U.S.C. § 3553(a)(2)............................................. 11
18 U.S.C. § 3553(a)(6)............................................. 12
18 U.S.C. § 3664(b)(5)............................................. 13

**RULES**

United States Sentencing Guidelines Sections 2E1.1(a)(2), 2A1.1(a).. 7
USSG § 2A1.1....................................................... 8
USSG §§ 2E1.1, 2A1.1............................................... 7

**GOVERNMENT'S SENTENCING MEMORANDUM**

**I.   INTRODUCTION**

On January 10, 2022, Florencia 13 member/defendant Luis Alfredo De La Rosa Rios ("defendant") and his Florencia 13 member/co-defendants engaged in an armed robbery spree, culminating in a single shot that killed victim F.A., an off duty Los Angeles Police Department ("LAPD") officer.  For this, defendant pleaded guilty to RICO conspiracy and agreed the appropriate sentence in his case is between 35 and 50 years' imprisonment.  Despite positive things in defendant's life, including three children and steady construction work, defendant reached again for the false prestige of gang life and one of its basic tenets -- using fear and loaded guns to take whatever they want, at whatever cost.  On that fateful night last year, the cost was victim F.A.'s life -- a life that inspired the promise of a better day and represented the best of us, and a life whose loss is felt by victim F.A.'s friends and family every day.  Now, defendant faces the consequences.

Defendant's crime was serious and warrants a significant prison term, to which defendant has agreed.  Because defendant accepted responsibility for his crime, the government respectfully requests that the Court sentence defendant to 50 years' imprisonment, five years' supervised release, a $100 special assessment, and restitution to be determined, which sentence is sufficient, but not greater than necessary to accomplish the goals of sentencing.

**II.   STATEMENT OF FACTS**

**A.   F.A.'s Background**

Victim F.A., 27 at the time of his murder, grew up in South Central Los Angeles with his grandmother.  Victim F.A., a track star,

graduated from Crenshaw High School, with honors, and received his undergraduate degree from the University of California, Berkeley, once again with honors. With opportunities abounding, victim F.A. chose to serve the community he called home and joined the LAPD after graduation. Assigned to Olympic Division, victim F.A. quickly stood out as an officer with integrity, drive, honesty, and humility. Upon seeing one of victim F.A.'s first LAPD crime reports, Victim F.A.'s lieutenant easily recognized something special about victim F.A. and asked victim F.A. where he attended school. Victim F.A., humbly, said he was an "LAUSD student." The lieutenant repeated his question, and victim F.A. said that he graduated from "Cal Berkely, sir."[1]

### B. Florencia 13, the Enterprise

Florencia 13 is a multi-generational gang, founded in Los Angeles in the 1950s, located in South Central Los Angeles, which constituted an enterprise engaged in activities affecting interstate and foreign commerce. (PSR ¶ 18; Dkt. 296 at 10.) Florencia 13 is controlled by members and associates of the Mexican Mafia, a criminal organization operating within the California state prison system, the federal prison system, and streets and suburbs of large cities, including Los Angeles, throughout Southern California. (Id.)

Beginning on a date unknown, and continuing to at least July 12, 2023, defendant was a Florencia 13 member of the Tiny Locos clique. (PSR ¶ 19.) Defendant had Florencia 13 tattoos on his body, including a large tattoo, "Florencia," across his chest. Defendant

---

[1] A true and correct copy of victim F.A.'s LAPD Olympic Division lieutenant victim impact statement was filed separately at Dkt. No. 337.

2

also had photographs of guns on his cell phone and Facebook account, and possessed videos of himself handling firearms. Florencia 13's members engaged in, among other things, acts involving murder, robbery, and trafficking in narcotics. (Id.) Defendant conspired and agreed with Florencia 13 members and associates that a conspirator would commit at least two racketeering acts, to include murder, robbery, and drug trafficking. (Id.) Defendant became a member of this conspiracy, knowing of its purpose, knowing it was illegal, and intended to help accomplish it. (Id.) In furtherance of the conspiracy, defendant personally committed two racketeering acts, including the robberies of victims S.A. and J.M., the robbery of A.M., and the robbery and murder of victim F.A. — all on January 10, 2022. (PSR ¶¶ 20-23.)

### C. Robbery of S.A. and J.M.

Hours before robbing A.M. and robbing and murdering victim F.A., defendant robbed victims S.A. and J.M. (PSR ¶ 21.) On January 10, 2022, defendant and co-defendant Jesse Contreras drove around Los Angeles in defendant's truck, looking for people to rob. (Id.) Defendant covered his license plate to avoid detection by law enforcement. (Dkt. 296 at 11.) At approximately 2:00 a.m., defendant and co-defendant Contreras committed armed robbery of S.A. and J.M., in front of the El Norteño Bar, located in Los Angeles, California, within F13's territory. (PSR ¶ 21.)

Specifically, defendant approached S.A. from behind, pointing a gun toward S.A., and co-defendant Contreras stood in front of S.A. with a loaded gun in co-defendant Contreras' hand. (Id.) Defendant told S.A. to give his money to defendant and co-defendant Contreras, or they would kill victim S.A. (Id.) Defendant and co-defendant

Contreras took S.A.'s wallet, removed cash, between approximately $300 and $600, discarded the wallet, and took S.A.'s cell phone and car keys. (Id.)  After robbing S.A., defendant and co-defendant Contreras pointed their guns at J.M., removing approximately $1,600 in cash and J.M.'s car keys from J.M.'s pants pockets. (Id.)

### D. Murder of F.A.

Later the same day, on January 10, 2022, defendant and co-defendant Contreras picked up co-defendant Cisneros in defendant's truck.  (PSR ¶ 22; Dkt. 296 at 12.)  While approaching 1712 E. 87th Street, Los Angeles, California, within F13's territory, defendant and co-defendants Cisneros and Contreras decided to rob F.A. and A.M., because F.A. was wearing chains around his neck. (Id.)  F.A. and A.M. were in the area, because they were house hunting and wanted to see a house before it hit the market.  Defendant pulled his truck in front of F.A. and A.M.  (Id.)  Co-defendant Contreras handed defendant a loaded gun.  (Id.)  Defendant and co-defendant Cisneros exited defendant's truck, each with loaded guns.  (Id.)  Co-defendant Cisneros approached F.A., patted him down, and took F.A.'s chains and wallet, which contained F.A.'s LAPD identification card, as F.A. was an off-duty LAPD officer.  (Id.)  Armed with a loaded gun, defendant approached A.M., patted her down, and seized her walking stick. (Id.)  During the course of the robbery, defendant and co-defendant Cisneros shot at F.A.  Though the entire encounter lasted only about 15 seconds, the consequences are permanent: victim F.A. was struck down and killed by a single, fatal bullet.[2]  (Id.)

---

[2] A true and correct copy of surveillance footage of the robbery and murder will be contemporaneously lodged with the Court as Exhibit A.

4

After Victim F.A. fell, a good Samaritan and victim A.M. called 911, reporting the shooting of victim F.A., an off duty LAPD officer.[3]  A good Samaritan began CPR on victim F.A. until two Los Angeles Sheriff's Department ("LASD") units arrived on scene.  An LASD deputy took over the chest compressions on victim F.A.  Once LASD ascertained how much time had transpired between the shooting and their arrival, LASD Deputy Parker made the decision to transport victim F.A. in a patrol car to St. Francis Hospital.  Deputies helped place victim F.A. in the back of a patrol car, on top of Deputy Parker, and they sped, lights and sirens, to the hospital, where victim F.A. was ultimately pronounced dead.[4]

### III. VICTIM IMPACT

Victim F.A.'s family members, friends, and colleagues describe the devastating impact as a result of defendant's actions.  (Dkt. No. 336, Exs. 1-4; Dkt. No. 337, Exs. 5-6.)  They describe the mental and emotional toll defendant's actions have left on them.  (Id.)  For example, victim F.A.'s mom explains that he was "everything" to her, and laments the loss of her only son.  (Id.; PSR ¶ 22.)  They describe the loss they continue to feel almost two years later, and similarly urge this Court to impose a serious and significant sentence.  The statements underscore the permanent impact defendant's crime has had – and will continue to have – on their lives.  Only a serious sentence by this Court can reflect the severity of the

---

[3] A true and correct copy of victim A.M.'s 911 call for service will be contemporaneously lodged with the Court as Exhibit B.

[4] A true and correct copy of the Body Worn Camera ("BWC") footage of Deputy Parker's arrival on scene, LASD taking over chest compressions, and transport to the hospital will be contemporaneously lodged with the Court as Exhibit C.

offense, protect the public against this defendant, and deter other would-be offenders from engaging in such conduct.

**IV.   PROCEDURAL BACKGROUND**

On January 10, 2022, defendant and his co-defendants robbed and murdered victim F.A.  On January 13, 2022, the United States filed a Complaint, charging defendant with VICAR felony murder.  (Dkt. 1.) On January 14, 2022, defendant made his initial appearance. (Dkt. 14.)  On January 27, 2022, a federal grand jury returned an Indictment, charging defendant with VICAR felony murder.  (Dkt. 46.) On July 13, 2023, the Court filed defendant's plea agreement, Dkt. 296, and defendant pleaded guilty to the First Superseding Indictment.  (Dkt. 295, 305.)  On August 21, 2023, Probation issued the Presentence Investigation Report ("PSR").  (Dkt. 310.)

**V.   ARGUMENT**

**A.   Sentencing Guidelines' Calculations**

1.   The Plea Agreement

On July 13, 2023, defendant pleaded guilty to an Information charging him with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), with an Apprendi allegation that defendant willfully and intentionally committed robbery, and while committing robbery, committed acts that directly caused the death of F.A.  (Dkt. 295, 296, 305.)  In his plea agreement and during the Rule 11 colloquy with the Court, defendant admitted the facts underlying this allegation, thereby increasing the statutory maximum penalty to life in prison, to which he agreed in his plea agreement.  (Dkt. 296 at 7-8.)

In the plea agreement, the parties agreed the base offense level for racketeering conspiracy was 43, pursuant to United States

6

Sentencing Guidelines Sections 2E1.1(a)(2), 2A1.1(a).  (Dkt. 296 at 13.)  The parties agreed to a three point adjustment for defendant's acceptance of responsibility.  (Id.)  The parties also agreed that an appropriate disposition of this case is for the Court to impose a sentence of no less than 420 months' imprisonment (35 years) and no more than 600 months' imprisonment (50 years).  (Id.)

### 2. The USPO's Calculations

Probation agrees with the parties that the base offense level is 43, pursuant to USSG §§ 2E1.1, 2A1.1.  (PSR ¶¶ 35-37.)  Probation also agreed that defendant is entitled to three points for Acceptance of Responsibility, pursuant to USSG § 3E1.1(b).  (PSR ¶¶ 45-46.)  Probation calculated defendant's total offense level at 40.  (PSR ¶ 47.)  Probation also informed that Application Note 2(B) to USSG § 2A1.1 states that in the case of felony murder, life imprisonment is the appropriate sentence.  (PSR ¶ 36, footnote 2.)

### 3. The Parties' Agreement

For a violation of 18 U.S.C. § 1962(d), racketeering conspiracy, the applicable Guidelines' section is 2E1.1(a)(2), which instructs that the base offense level is the level applicable to the underlying racketeering activity.  In this case, the most serious underlying racketeering activity is first degree murder, for which the applicable Guidelines' section is 2A1.1(a), which requires a base offense level of 43.  With an adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(b), defendant's total offense level is 40.  At Criminal History Category II, this results in a guideline range of 324-405 months' imprisonment.  However, the parties agreed an appropriate sentence in this case is between 420 months and 600 months' imprisonment.

**B.   Government's Sentencing Recommendation**

    1.   History and Characteristics of Defendant

Under 18 U.S.C. § 3553(a)(1), a court must consider "the history and characteristics of the defendant" in imposing a sentence. Defendant and victim F.A. were born exactly eight days apart in February 1994, PSR ¶ 63, making them the same age, 27, at the time of victim F.A.'s murder. Defendant has three minor children who live with their mother. (PSR ¶ 64.) Defendant lived with his mother his entire life, except when he traveled out of state for work. (PSR ¶ 66.)

Defendant is a longtime Florencia 13 member, PSR ¶ 19, who celebrated firearms, which defendant wielded and used to kill victim F.A. Although defendant appeared to have been working construction jobs in other states, he returned to Los Angeles in December 2021 where he linked up with co-defendants Contreras and Cisneros, both Florencia 13 members, and possessed loaded firearms. Neither the existence of his children nor his out of state construction work deterred defendant from continuing to engage in violent crimes in Florencia 13's name with Florencia 13 members. Accordingly, defendant's history and characteristics demand a lengthy sentence of imprisonment.

    2.   Nature and Circumstance of the Offense

Under 18 U.S.C. § 3553(a)(1), a court must consider "the nature and circumstances of the offense" in imposing a sentence. Notwithstanding defendant was a father, home for the holidays after working construction out of state, defendant chose to find and associate with other Florencia 13 members — with firearms. Undeterred after an LAPD traffic stop on January 9, 2022, defendant

8

and his co-defendants drove around Los Angeles, looking for people to rob. Defendant and his co-defendants upped the ante, increasing risk of harm to others, because they used loaded firearms to perpetrate their robberies.

Defendant and co-defendant Contreras paced in front of the El Norteño Bar, in Florencia 13's territory, appearing to wait for band members who would have had a large amount of cash after performing for hours at the bar. Defendant pointed a gun, likely loaded, at victim S.A.'s head and threatened that if victim S.A. did not give him and co-defendant Contreras victim S.A.'s cash, then defendant and co-defendant Contreras would kill victim S.A. (PSR ¶ 21.) After robbing victim S.A., defendant and co-defendant Contreras turned their likely loaded firearms on victim J.M. and took money and car keys from victim J.M.

With pockets full of cash at this point, defendant and co-defendant Contreras decided to pick up co-defendant Cisneros to continue their robbery spree in Los Angeles. Defendant covered his truck's license plate to avoid detection by law enforcement, likely knowing that he would continue his violent crime spree. Defendant and co-defendants Contreras and Cisneros drove around, again looking for people to rob. (PSR ¶ 22.)

House hunting at the wrong place at the wrong time, victim F.A., wearing chains around his neck, caught defendant's attention. Because of victim F.A.'s chains, defendant and co-defendants Contreras and Cisneros made the decision to rob victim F.A. and his girlfriend, victim A.M. It goes without saying that the more times you commit armed robbery, the more likely it is that someone will get hurt – or killed. This was that time. Even though defendant already

9

robbed other victims of about $2,000 earlier the same day, his greed and sense of power — that he could take whatever he wanted—won out, and he robbed victims F.A. and A.M., shooting at victim F.A., killing him. The nature and circumstances of this offense support the government's sentencing recommendation.

          3.    <u>Need for Deterrence and Promotion of Respect for the Law</u>

The idea of justice in a murder case is always troubling, because justice is elusive and cannot undo what was done, or right the wrong inflicted on the victim or his family and friends. However, the government's recommended sentence achieves the purposes of sentencing under 18 U.S.C. § 3553(a)(2), including to "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," "protect the public from further crimes by defendant," and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." <u>See</u> 18 U.S.C. § 3553(a)(2). Defendant, a Florencia 13 member, hooked up with two fellow Florencia 13 members and engaged in a robbery spree – a robbery spree where defendant pointed loaded guns at people, believing he could take what did not belong to him, at any cost. The government's recommended sentence will serve as a message of deterrence that members of criminal enterprises and street gangs who rob victims at loaded gunpoint face significant incarceration, to protect the public from future crimes by those who are willing to risk peoples' lives.

10

4. Need to Avoid Unwarranted Sentencing Disparities

The recommended sentence will also "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Because the Sentencing Guidelines exist to ensure national uniformity in sentencing, a sentence within the applicable Guidelines range ordinarily avoids disparity between similarly situated defendants. See Gall v. United States, 552 U.S. 38, 54 (2007). As Probation pointed out in the PSR, life imprisonment is appropriate for defendants who commit felony murder. Just as life imprisonment is an appropriate sentence for those who commit murder, a sentence of 50 years' imprisonment is appropriate and consistent with other federal murder sentences, particularly where defendant committed at least two violent robberies on the same day, with loaded guns, with a fellow member of his gang, and one of them resulted in murder.

The government submits that the requested sentence takes into account all of the facts and circumstances of the case and the defendant. The Court is also entitled to rely on a correctly calculated Guidelines range in finding that there is no unwarranted disparity between defendant and other offenders convicted of similar offenses. United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010).

**VI. FINE AND RESTITUTION**

Probation determined that defendant does not have the ability to pay a fine at the time of sentencing. (PSR ¶ 78.) Accordingly, the government concurs that defendant is unable to pay any fine at this time or at any point in the foreseeable future.

11

Defendant's financial condition, however, does not preclude a restitution order. By statute, the "issuance of a restitution order . . . is mandatory" and a court may not decline to issue restitution due to "the economic circumstances of the defendant." 18 U.S.C. § 2259(b)(4)(A), (b)(4)(B)(i). (PSR ¶¶ 94-98.) The government has produced receipts and underlying documentation to the defense to support its restitution requests on behalf of the victims in this case. As of this filing, the parties are still meeting and conferring regarding these requests. To the extent an agreement can be reached before the sentencing date in this matter, the government will update the Court. If not, the government seeks a 70-day continuance to February 26, 2024 under 18 U.S.C. § 3664(d)(5). This subsection provides that "[i]f the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing."

**VII. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court sentence defendant to 50 years' imprisonment, a five-period of supervised release, a special assessment of $100, and restitution, to be determined.